UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIO DELLA PORTA and
MEDIATRAY, LLC,                                    Case No. 19-13733

                        Plaintiffs,               Paul D. Borman
v.                                                 United States District Judge

HORSECO, INC., TOM LUDT, JAMIE                     Anthony P. Patti
LAMONICA and KEVIN LISKE,                          United States Magistrate Judge

                        Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANTS'

MOTION TO DISMISS (ECF NO. 6)

I.      **Procedural History**

On December 19, 2019, Plaintiffs Valerio Della Porta and his company
Mediatray, LLC filed a Complaint against Horseco, Inc., and Tom Ludt, Jamie
Lamonica, and Kevin Liske in their individual capacities, alleging claims of Breach
of Contract and Quantum Meruit in order to collect payment for services rendered
by Plaintiffs in the creation of an online horse auction software platform for
Defendants. (ECF No. 1.) On March 27, 2020, Plaintiffs amended their Complaint,
adding claims of unjust enrichment and promissory estoppel. (First Amended
Complaint, "FAC" ECF No. 4.)

1

Before the Court is Defendants' Motion to Dismiss the First Amended Complaint filed on April 17, 2020. (ECF No. 6, Motion to Dismiss.) First, Defendants argue the First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over any Defendant. Alternatively, Defendants argue the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to plead allegations showing a plausible entitlement to relief on any count. This Court determined, in an Order issued November 23, 2020, that under 12(b)(2), personal jurisdiction exists over each Defendant and denied the Defendants' motion as to those claims. (ECF No. 14.) A hearing on the section 12(b)(6) claims was held on November 24, 2020.

## II.     Background

### a.  The First Amended Complaint

Mr. Valerio della Porta is a computer programmer and owner of Mediatray, LLC, who lives and works in Detroit, Michigan. (FAC ¶¶ 5-6.) In January 2019, Plaintiff della Porta alleges that he was solicited by Defendant Liske to create an online horse auction platform for the Defendants and ultimately contracted with the individual Defendants and/or Horseco for the creation of that platform. (*Id*. ¶¶ 12, 17, 50.) Although each Defendant did not participate in soliciting Plaintiffs, Plaintiff alleges: "To the extent that any Defendant did not expressly request services from one or both Plaintiffs, such Defendant authorized Defendant Liske to request

2

services from one or both Plaintiffs." (*Id*. ¶ 50) Plaintiffs agreed to produce the app "on the understanding that they would be compensated for the reasonable value of their time and expertise whether in cash or a mix of cash and equity in the Horseco venture." (*Id*. ¶ 19)

After this oral contract is alleged to have been reached, Plaintiffs began work on the platform in constant consultation with Defendants. (*Id*. ¶ 17.) As to payment, "Plaintiffs' agreed to begin working on the project without immediate compensation," given that it is "commonly the practice with startups in the tech world" for the company to need to solicit funding. (*Id*. ¶ 20.) After four months working unpaid, Horseco began sending monthly payments of $7000 to Plaintiffs in May 2019, continuing until December 2019 (*Id*. ¶ 22.)

Plaintiffs continued to work on the project to the point where it was substantially completed on or about December 10, 2019. (*Id*. ¶ 25) Plaintiff alleges that "Despite repeated requests for final compensation" and providing documentation of the hours worked, "Defendant failed to pay any amount beyond the $7000 monthly amount paid during the period from May to December." (*Id*. ¶ 26.) In August, Defendants began "requesting then insisting" that Plaintiffs turn over the source code for the app "which would enable them to turn to other to complete the final finishing touches on the project and cut Plaintiffs totally out of the picture." (*Id*., ¶ 27.) Della Porta continued to pursue compensation, and during a telephone

conversation with Defendant Ludt, della Porta was told would be "served with papers" and that courts would handle the matter. (*Id*, ¶ 28.)

Plaintiffs admit to having been paid a total of $56,000 and allege the value of their work done on the project is approximately $331,200 (*Id*., ¶ 30), grounding this number in "the average hourly rate for programmers with the level of experience [of della Porta being] approximately $200/hour," and that della Porta spent a total of 1656 hours on the project. (*Id*. ¶¶ 37-38.) Finally, the software provided by Plaintiffs "worked as requested and benefitted Defendants (regardless of whether Defendants chose to market the software) and has been retained by Defendants." (*Id*. ¶ 61)

### b.  Filings

When considering a section 12(b)(2) motion to dismiss for lack of personal jurisdiction in this procedural posture, the court may consider affidavits and other materials outside the pleadings. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). The Court cannot apply these affidavits and materials when considering the motion under section 12(b)(6).

Plaintiffs attach della Porta's declaration to their Response. (ECF No. 11.) In that document, della Porta details the past and current relationship between the parties. Della Porta has known Defendant Liske for 20 years but began a closer association in 2016 when Liske enlisted della Porta to write code for a tech startup—

4

Curare Telehealth, which became Privato Group, LLC. (Declaration of Valerio della Porta, "della Porta decl.," ¶¶ 4-6, ECF No. 11-2 PageID.307.)

Significantly, over the course of Plaintiffs' work on the Horseco platform, the parties communicated regularly about "every aspect of software development associated with the Platform . . . ." (*Id*., ¶ 40.) Della Porta received 25 emails from Liske, 88 emails from Lamonica and 140 emails from Ludt. Della Porta sent 307 emails to Liske, 187 to Lamonica, and 182 to Ludt. (*Id*., ¶ 40.) Plaintiff also reports many phone calls, particularly with Liske and Lamonica, who preferred talking on the phone, and 17 weekly video conferences to discuss the status of his work on the platform. (ECF No. 11 PageID.283.)

Plaintiff reports that he was not aware of, and was not concerned about, the internal arrangements made by the individual defendants and Horseco for ownership of the platform and intellectual property, or whether he was creating the software specifically for Horseco or the three individuals. (della Porta decl., ¶¶ 28-30.) Della Porta declared, "[w]hether they were acting individually or as officers of Horseco is something that I did not know then and still do not know today." (*Id*., ¶ 30.)

Each individual Defendant claims they were working on behalf of Horseco and not in their individual capacity in anything related to this matter with Plaintiffs. Liske, who solicited and formed an oral contract with Plaintiffs in Michigan, claims,

"As it relates to any business discussions I had with Plaintiffs concerning this matter, all such discussions or communications were made on behalf of Horsco." And, "On Behalf of Horseco, I requested della Porta to perform computer programming for Horseco. Della Porta was providing computer programming services solely to Horseco and not to the individual Defendants." (Affidavit of Kevin Liske ¶¶ 5-6, ECF No. 6-3 PageID.82-83.) Ludt and Lamonica each claim, "As it relates to any business discussions I had with Plaintiffs, all these discussions or communications were made in my capacity as [CEO/ President/] of Horseco. I never entered into any agreement (oral or otherwise) in my individual capacity with Plaintiffs." (Affidavit of Tom Ludt, ECF No. 6-4 PageID.88; Affidavit of James Lamonica, ¶ 9, ECF No. 6-2 PageID.78.)

### III.   Legal Standards

#### a.  Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

In a diversity action, there is a two-part test for determining whether the court may exercise personal jurisdiction over a non-resident defendant. First, the court must determine whether jurisdiction is authorized under the forum state's long-arm statute. *See Air Prod. & Controls, Inc. v. Safetech Int'l Inc.,* 503 F.3d 544, 550 (6th Cir. 2007). If the answer to that question is yes, then the court must determine whether the exercise of jurisdiction comports with constitutional due process. *Id.* Because Michigan's long-arm statute extends to the limits of due

process, these two inquiries merge into one. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992).

The Sixth Circuit has established a three-part test ("*Southern Machine* test") to determine if application of a state's long-arm statute meets due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). A motion to dismiss for lack of personal jurisdiction can be resolved either on the affidavits or after an evidentiary hearing. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). When relying on affidavits rather than holding an evidentiary hearing, the facts are viewed in the light most favorable to the plaintiff. *Id.* In addition, a plaintiff need only make a "*prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* While a motion to dismiss would normally be converted to a motion for summary judgment by asking the court to consider additional documents, a 12(b)(2) motion "mirrors in some respects the procedural treatment given to a motion for summary judgment." *Id.* at 1459. Along those lines, in the face of a properly supported motion for dismissal, the plaintiff may not "stand on his pleadings, but must, by affidavit or otherwise, set forth specific facts showing

7

that the court has jurisdiction." *Id.* at 1458. Accordingly, in *Theunissen,* when the defendant supported his motion to dismiss with affidavits, the plaintiff was required to respond accordingly rather than rest on his pleadings. *Id.* Unlike a motion for summary judgment, though, a court may not "weigh the controverting assertion[;]" rather, if facts proffered by the defendant conflict with those offered by the plaintiff, a district court does not consider them. *Id.* at 1459; *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 626 (6th Cir.1998). "When . . . a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### b. Failure to State A Claim Upon Which Relief Can be Granted – Fed. R. Civ. P. 12(b)(6)

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Sixth Circuit "precedent instructs that, for a complaint to survive such motions, it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.' " *Buck v. City of Highland Park, Michigan*,

733 F. App'x 248, 251 (6th Cir. 2018) quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc*., 732 F.3d 645, 649 (6th Cir. 2013). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.' " *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    Analysis

### a.  Personal Jurisdiction

Personal jurisdiction must be analyzed and established over  each  defendant independently. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In their affidavits attached to the Motion to Dismiss, each individual Defendant claims they were, at all times, acting on behalf of Horseco in their official capacities, disclaiming any involvement in an individual capacity. Plaintiffs admit in their Response that they did not know whether the individual Defendants were acting 1) on behalf of Horseco, or 2) merely individually, or 3) on behalf of both themselves and Horseco. (ECF No. 11 PageID.297.)

Acting on behalf of Horseco will not absolve the individual Defendants of this Court's jurisdiction. In the Sixth Circuit, "It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc*., 204 F.3d 683, 698 (6th Cir. 2000). At the same time, "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on . . . whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id*., citing *Burger King* 471 U.S. at 474; *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

To satisfy the first prong of the *Southern Machine* test, a plaintiff must show that a given defendant purposefully availed himself of "the privilege of acting in the

forum state or causing a consequence in the forum state." *S. Mach.,* 401 F.2d at 381. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.' " *Burger King* 471 U.S. at 475 (1985) (internal citations omitted).

"The existence of a contract with a citizen of the forum state, standing alone, will not suffice to confer personal jurisdiction over a foreign defendant." *Mitchell v. W. Serv. Ctr., Inc*., 2017 WL 6493234, at *2 (E.D. Mich. 2017) citing *U.S. ex re. Hadid v. Johnson Controls Inc*., 2005 WL 16390098, at *3 (E.D. Mich. 2005) citing *Burger King*, 471 U.S. at 478. When determining if the Defendant has availed themselves of the forum state beyond the existence of a contract, the factors to consider are prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544 (6th Cir. 2007) citing *Burger King,* 471 U.S. at 476, 479. Additionally, although the Court has said that physical presence in the forum state is not required, *Burger King*, 471 U.S. at 476, physical entry by the defendant "is certainly a relevant contact." *Walden*, 571 U.S. at 285; *see MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017).

Defendants first argue that Plaintiffs' decision to premise many of their allegations on an "and/or" basis renders their allegations insufficient. For example, Plaintiffs allege:

> ¶ 17. "To accomplish their goal, the individual Defendants **and/or** Horseco solicited services from **and/or** ultimately contracted with Plaintiffs to produce and license the app for retail auctions. Through the course of development, in consultation with defendants…"

(emphasis added.)

Based on the pleadings and affidavits before the court, Plaintiffs have plausibly alleged facts, viewed in a light most favorably to the nonmoving Plaintiffs, that each Defendant solicited plaintiffs and are party to the contract, whether by personally contracting with Plaintiffs individually or on behalf of Horseco, or authorizing another Defendant to solicit and contract. There are factual allegations that each Defendant followed up on that contract for almost a year.

Next, regarding purposeful availment, Defendants make two primary arguments. First, Defendants argue that any contacts with Plaintiffs in Michigan are simply contacts with the Plaintiffs, who happen to be in Michigan, rather than with Michigan itself, and contacts between a plaintiff and the forum state cannot form a basis for jurisdiction. (ECF No. 6 PageID.58-59; ECF No. 12 PageID.78-79.) Second, Defendants argue that the contacts are not of the quality or quantity to create

extensive enough "continuing and wide reaching contacts" necessary to confer jurisdiction. (ECF No. 6 PageID.59-62; ECF No. 12 PageID.380.)

Defendants argue, relying on *Walden v. Fiore,* that contacts between the parties were not contacts with Michigan, but rather contacts with Plaintiffs, who happen to be Michigan-based. 571 U.S. 277 (2014); (ECF No. 12 PageID.378.) Defendants' reliance on *Walden* to attempt to characterize Defendants' contacts as such is mistaken. (ECF No 12 PageID.378.) In *Walden*, the Supreme Court considered whether a federal court in Nevada had jurisdiction over a Georgia police officer who had seized money in a Georgia airport from Nevada residents and then filed a false affidavit against those Nevada residents knowing that it would affect them in Nevada. *Walden v. Fiore*, 571 U.S. 277 (2014). The Court found that the defendant officer lacked minimum contacts with Nevada because the officer's conduct occurred in Georgia and because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 287-89. The officer's only connection to Nevada was by way of the plaintiffs he targeted residing there. *Id.* Based on these facts, the court held that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289-90.

Unlike in *Walden*, Defendants here reached out to a Michigan resident for services, contracted with that resident, and directed communications and payments over the course of a year to that Michigan resident. The Defendants here, who

13

purposely reached out to Michigan and engaged in a year-long business relationship cannot be said to have caused a "mere injury" to a forum resident. Unlike the defendant in *Walden*, the Defendants here have numerous other contacts with the forum state, not just an injury to a plaintiff who happens to reside there.

The Sixth Circuit in *Shmuckle* criticized a similar line of argument, where the defendant attempted to use *Walden* to characterize all of their jurisdictional contacts as simply contacts with the plaintiffs, rather than the forum state. Rejecting an overly-broad reading of *Walden*, the court noted that "[i]t would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state." *MAG IAS Holdings, Inc. v. Schmuckle,* 854 F.3d 894, 901 (6th Cir. 2017). Given that Defendants here intentionally initiated business with Michigan-based entities and continued that business relationship for nearly one year is enough to separate this case from *Walden*.

Second, Defendants argue that their contacts are not "continuing and wide reaching" enough for jurisdiction to be proper. Defendants fail to establish that a party who reaches out to a forum state plaintiff, contracts with that plaintiff for plaintiff's services, communicates with that plaintiff for almost a year and makes payments pursuant to the contract has not made minimum contacts.

A foreign party reaching into the forum state to initiate a business relationship will weigh in favor of finding jurisdiction. *Burger King* 471 U.S. at 473 ("parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.") In *Light Source*, this Court noted the fact that the foreign party initiated contact "weigh[ed] heavily in favor of asserting jurisdiction." *Light Source, Inc. v. Display Dynamics, Inc*., 2010 WL 2351489, at \*6 (E.D. Mich. 2010) (Borman, J.). Sixth Circuit cases generally recognize the importance of the foreign party "reaching out" to the forum state to inform whether the availment of the forum State was purposeful. *See, e.g.*, *Air Products*, 503 F.3d at 551 (Court found it important in finding jurisdiction that "Defendants reached out beyond Kansas' borders to conduct business with a company it knew to be in Michigan."); *Kerry Steel*, 106 F.3d 147, 151 (6th Cir. 1997) (finding no jurisdiction where foreign party did not reach out to the forum party, among other factors).

The email, phone, and videoconference communications between the individual Defendants and Plaintiffs, which according to Plaintiffs "involved every aspect of software development associated with the Platform . . ." are jurisdictionally relevant.

Several cases in the Sixth Circuit have noted that electronic communications such as email and phone calls "strike us as precisely the sort of 'random,' 'fortuitous'

and 'attenuated' contacts that the *Burger King* Court rejected." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989). In *Kerry Steel*, the court found it "immaterial" to the purposeful availment analysis that the foreign party had made phone calls and sent faxes to the party in the forum state. 106 F.3d 147, 151 (6th Cir. 1997). Another Court of Appeals in the Sixth Circuit elsewhere recognized that when "it was for the plaintiff's convenience that Defendant directed its communications to [forum state]," the Sixth Circuit has found personal jurisdiction lacking. *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 207 F.3d 386, 395 (6th Cir. 1997). However, in each of these cases, however, the foreign party did not initiate contact and solicit business with an entity located in the forum State. Here, Defendants reached out to Plaintiffs, known to be located in Michigan, to solicit Plaintiffs' services. Thereafter, all communications and payments made in furtherance of the completion of the requested services are therefore not "fortuitous," but flow from the purposeful continuous contact with a Michigan resident.

The relevance of communications following the foreign party initiating contact with the forum party was demonstrated by this court in *Light Source*. *Light Source, Inc. v. Display Dynamics, Inc.*, 2010 WL 2351489 (E.D. Mich. 2010). In *Light Source* Defendant DDI solicited Light Source, a Michigan Company, to provide lighting goods and services for DDI's contract to renovate the USS Intrepid in New York. This Court found purposeful availment satisfied by the solicitation of

16

a company known to be located in Michigan, along with "the multitude of orders placed to Light Source in Michigan, followed by multiple emails, faxes and letters in furtherance of that contractual relationship, are of a quality, regardless of quantity, to satisfy the *Burger King* purposeful availment requirement." *Id*., at *5 (E.D. Mich. 2010).

Defendants cite *Bulso v. O'Shea* to attempt to diminish the relevance of Defendants' communications with della Porta in Michigan. 730 F. App'x 347, 350 (6th Cir. 2018); (ECF No. 12 PageID.379.) Defendants correctly point out that the *Bulso* court found that the plaintiffs' contacts with the forum "came from [plaintiff's] firm being located in [the forum], not because the defendants sought to invoke the benefits and protections of [the forum's] law." *Id*. at 350. The exact dispute forming the basis for the case in *Bulso*, however, makes it readily distinguishable from the case before the court today.

Bulso, a Tennessee attorney, filed a malicious prosecution charge in Tennessee federal court against former clients who filed a legal malpractice claim against him in Alabama, stemming from Bulso's legal services in representing defendants in Alabama, California and Hawaii. *Id.* Although Defendants initially reached out to Bulso for representation and communicated with Bulso in Tennessee, the key fact appeared to be that the "contacts [defendant] identifies all relate to litigation in other states." *Id.* The court reasoned that "[defendants] originally sued

Bulso in a California court under California law for misconduct related to litigation in Alabama, California, and Hawaii. Bulso fails to demonstrate how the defendants invoked Tennessee's benefits and protections through the litigation in California and Alabama." *Id*. Tellingly, the court found that the litigation did not "arise from" Defendants' contacts with the forum. *Id*., at 351.

Defendants also cite to a district court decision to argue a lack of connection to the state of Michigan and that "communications alone do not establish jurisdiction" *Mitchell v. W. Serv. Ctr., Inc.,* No. 17-10325, 2017 WL 6493234, at *3 (E.D. Mich. 2017); (ECF No. 12 PageID.378.) Defendants ignore the key difference between *Mitchell* and the instant case, one that is fundamental to the purposeful availment analysis: the fact that Defendants here purposefully reached out to Michigan entities to initiate a business relationship.

In *Mitchell*, the plaintiff was a vehicle repair/towing dispatcher in an existing employment relationship with the defendant in Virginia and the parties agreed that the plaintiff would move to Michigan while continuing work for the defendant. Similarly to the case here, a foreign-state defendant was in a contractual relationship with a forum state plaintiff for services, which were largely performed in the forum state. Defendants in both cases did not direct sales at Michigan, did not provide services in Michigan, and did not have any other contracts with Michigan entities. No defendant had traveled to the forum state in either case, and any face to face

18

interactions between the parties occurred outside the forum state. However, in *Mitchell*, the existing relationship began in Virginia and contract at issue was negotiated and signed in Virginia. The court held that "[t]he fact that Plaintiff decided to move to Michigan cannot serve as a reason to create personal jurisdiction." *Id., at* \*3.

Defendants are not being haled into court in Michigan as the result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.' " *Burger King,* 471 U.S. at 475 (1985) (internal citations omitted). Defendants contracted with a Michigan individual and LLC, communicated and directed the work of Plaintiffs in Michigan over the course of nearly a year, and sent several payments to a Michigan bank account. Their failure to pay has predictably caused an injury for which they are being haled into court.

Defendants do not challenge the remaining prongs of personal jurisdiction—a requirement that the plaintiff's cause of action "arises from" the defendant's contacts with the forum state, and a requirement that the exercise of jurisdiction be "reasonable." *S. Mach.,* 401 F.2d at 381. Plaintiffs have plausibly alleged that without Defendants' reaching out to Plaintiffs in Michigan, there would be no cause of action. *See, e.g. Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir.2003) (quoting *Third Nat. Bank in Nashville v. WEDGE Group Inc.,* 882 F.2d 1087, 1091 n. 2 (6th Cir.1989) (articulating the standard as whether the causes of

19

action are "related to" or "connected with" the defendant's contacts with the forum state.) The Defendant's contacts are certainly "related to" the cause of action. As to the reasonableness prong, where, as here, the first two criterion are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Theunissen,* 935 F.2d at 1461. This court finds both prongs satisfied.

As stated in an Order issued on November 23, 2020, Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is DENIED.

### b. Breach of Contract

In order to advance a claim for breach of contract under Michigan law, a plaintiff must present factual allegations that establish the existence of (1) those parties who are competent to contract; (2) a proper subject matter; (3) a legally sufficient consideration; (4) a mutuality of agreement; and (5) a mutuality of obligation. *Mallory v. Detroit,* 181 Mich. App. 121, 127, 449 N.W.2d 115 (1989). Once a valid contract has been proven, a plaintiff who seeks to damages under this theory (i.e., breach of contract) must show that (1) the terms of the contract require the performance of certain action; (2) a party breached the contract; and (3) the violation caused the other party to sustain an injury. *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir.1999); *Johnson v. BNC Mortg. Corp*., No. 09-14717, 2010 WL 3515800, at *2 (E.D. Mich. 2010).

To support their motion to dismiss the breach of contract claim, Defendants again seize on the Plaintiff's "and/or" pleading when referencing the individual Defendants "and/or" Horseco. According to Defendants, "This grammatical sleight of hand reduces the Complaint to conclusory allegations," and compare the use of "and/or" to "information and belief" pleading. Attempting to bolster their argument, Defendants cite to a district court decision: *Carhartt, Inc. v. Innovative Textiles Inc.*, 323 F. Supp. 3d 917, 922 (E.D. Mich. 2018). In *Carhartt*, the court dismissed a breach of contract claim where the complaint contained no allegation whatsoever of a contract being formed. (*Id.*)  Here, on the other hand, the complaint contains factual allegations concerning the formation and continuous substantial execution of a services contract between Plaintiffs and the Defendants. (*See e.g.*, FAC ¶¶12, 17, 19, 50.)

The "and/or" pleading is not fatal to the Plaintiffs' breach of contract claim. At this motion-to-dismiss stage in litigation, Plaintiffs have plausibly alleged facts, assumed to be true, that each Defendant was party to the contract, whether by personally contracting with Plaintiffs on behalf of Horseco or authorizing another Defendant to do so, and then following up on that contract for almost a year, with the robust use of emails, phone calls, and weekly videoconferences involving all of the individual Defendants.

Defendants also argue that Plaintiffs have failed to adequately allege the material terms of the contract, notably the exact amount to be paid, and argue that this failure denotes a lack of meeting of the minds. In support, Defendants cite to a decision of the United States Court of Appeals for the Seventh Circuit (applying Michigan law) which held that an agreement—which identified a non-existent entity to be sold and which explicitly acknowledged that a definitive agreement remained to be negotiated—"too sketchy" to support a breach of contract claim. *Baker O'Neal Holdings, Inc. v. Massey*, 403 F.3d 485, 488 (7th Cir. 2005). That case has few similarities with the case before the court today. Here, while no written contract was prepared and no absolute price agreement was reached, Plaintiffs allege that the parties reached an agreement on Plaintiff's duties to create the online platform and, as common with startup ventures, Defendants' payment "for the reasonable value of [plaintiffs'] time and expertise whether in cash or a mix of cash and equity in the Horseco venture." Defendants argue that this allegation "necessarily means that the material term of payment was left to future negotiations." (ECF No. 6 PageID.68.)

This Court disagrees with Defendants' argument. A contract will not fail as a result of indefiniteness when the "promises and performances of each party are set forth with reasonable certainty." *Calhoun Co. v. Blue Cross Blue Shield Mich.*, 297 Mich. App. 1, 14 (2012) citing *Nichols v. Seaks*, 296 Mich. 154, 159; 295 NW 596 (1941). "[A]n agreement may be enforced as a contract even though incomplete or

22

indefinite in the expression of some terms, if it is established that the parties intended to be bound by the agreement, particularly where one or another of the parties has rendered part or full performance." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 633 (6th Cir. 2018) citing *J.W. Knapp Co. v. Sinas*, 19 Mich.App. 427, 172 N. W.2d 867, 869 (1969); *see also Nichols*, 296 Mich. at 159 ("A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." (quotation marks and citation omitted)) Finally, even "where the parties have left open some matters to be determined in the future, enforcement is not precluded if there exists a method of determining the terms of the contract either by examining the agreement itself or by other usage or custom that is independent of a party's mere 'wish, will and desire.' " *State Bank of Standish v. Curry*, 442 Mich. 76, 89–90 (1993).

The parties' actions after the contract formation, in particular the continuous contacts, provide sufficient factual allegations that there was a meeting of the minds and a contract was formed. As an immediate result of the agreement reached between the parties, Plaintiffs worked for almost a full year to create the online platform in consistent/continuing consultation with Defendants. Defendants eventually sent some monthly payments to Plaintiffs.

Given this clear intent for both parties to be bound by a contract, the allegation of an agreement for "reasonable payment" in cash or equity will not fail as a result

of indefiniteness. The "promises and performances of each party are set forth with reasonable certainty..." *Calhoun Co. v. Blue Cross Blue Shield Mich.*, 297 Mich. A pp. 1, 14 (2012).

Once a valid contract has been established, a plaintiff who seeks to damages under this theory (i.e., breach of contract) must show that (1) the terms of the contract require the performance of certain action; (2) a party breached the contract; and (3) the violation caused the other party to sustain an injury. *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir.1999). *Johnson v. BNC Mortg. Corp*., No. 09-14717, 2010 WL 3515800, at *2 (E.D. Mich. Sept. 8, 2010).

Defendants do not specifically challenge these elements of breach of contract. By alleging the value of his work performed ($331,200) compared to the amount he alleges to have been paid ($56,000), and the amount a similarly-experienced computer programmer would be paid ($200 per hour), della Porta has plausibly alleged breach and damages.

Defendants' Motion to Dismiss the Breach of Contract claim under Fed. R. Civ. P. 12(b)(6) is DENIED.

### c. Unjust Enrichment/Quantum Meruit

Defendants have moved to dismiss Plaintiffs' claims for Unjust Enrichment and Quantum Meruit. Those two claims have the same elements under Michigan

law: (1) Receipt of a benefit by the defendant from the plaintiff, and (2) the retention of the benefit by defendant is inequitable. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (1991). The measure of damages is distinct between these claims. When considering quantum meruit, damages are measured in reference to the plaintiff's expenses incurred to provide the services at issue, as opposed to unjust enrichment, which uses the value of the benefits retained by the defendant as the basis for that theory's damage calculation. *DaimlerChrysler Servs. v. Summit Nat., Inc*., No. 02-71871, 2007 WL 496689, at n.4 (E.D. Mich. 2007), aff'd sub nom. *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc*., 289 F. App'x 916 (6th Cir. 2008).

Defendants argue that because Plaintiffs have refused to turn over the source code to the platform, no benefit has been retained by Defendants. Based on the allegations in the First Amended Complaint, Plaintiffs have pled sufficient facts, accepted as true, that it is plausible a functional platform was delivered to Defendants, retained by Defendants, and is therefore a benefit that was delivered to Defendants. (FAC ¶¶ 60-61.) Further, assuming to be true Plaintiffs' allegation that they have not been paid full value for their work, the Defendants' retention of that benefit without payment would be inequitable.

Defendants' Motion to Dismiss the Unjust Enrichment/Quantum Meruit claims under Fed. R. Civ. P. 12(b)(6) is DENIED.

### d. Promissory Estoppel

Defendants have moved to dismiss Plaintiffs' claim for promissory estoppel. "In order to invoke promissory estoppel, the party relying on it must demonstrate that (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) and the promise must be enforced to avoid injustice. *Crown Tech. Park v. D&N Bank, FSB,* 242 Mich. App. 538, 548–49 (2000).

Defendants argue that the essential terms of the promise were not "clear and definite." However, a case cited by Defendants, *State Bank of Standish v. Curry,* includes a discussion of the similarities of promissory estoppel and contract claims, noting that the analysis of promissory estoppel "is consistent with the general rule of contract that, where the parties have left open some matters to be determined in the future, enforcement is not precluded if there exists a method of determining the terms of the contract either by examining the agreement itself or by other usage or custom that is independent of a party's mere "wish, will and desire." " 442 Mich. 76, 89–90, 500 N.W.2d 104, 110 (1993).

Plaintiffs allege that, in the context of "the prior relationship between Defendant Liske and Plaintiffs," Defendant Liske "made a clear and definite promise

to pay Plaintiffs for the reasonable value of their services rendered to Defendants," and that this relationship was validated by all of the Defendants' constant and continuing contacts with Plaintiff. (FAC ¶ 69.) By also alleging his hours worked, the reasonable value of his services, the amount a similarly-experienced computer programmer would be paid, and the continuing contacts with all the Defendants, Plaintiffs have plausibly alleged reasonable value of his services, a knowable value independent of a party's "wish, will and desire." *State Bank of Standish,* 442 Mich. at 89–90; (FAC ¶¶ 37-39.) Similarly to the breach of contract claim, this promise does not fail because the exact medium of payment between cash and equity was not solidified at that time.

Plaintiffs reasonably relied upon the promise, and acted in accordance with the promised contract by beginning work on the platform in close conjunction with all of the Defendants. Plaintiffs have sufficiently established that the promised contract must be enforced to avoid injustice – the failure of Defendants to pay the reasonable value of Plaintiffs' services.

Defendants' Motion to Dismiss the promissory estoppel claim under Fed. R. Civ. P. 12(b)(6) is DENIED.

## V.    Conclusion

Defendants' Motion to Dismiss is DENIED as to all counts.

SO ORDERED.


Dated: December 9, 2020                        s/Paul D. Borman

                                               Paul D. Borman
                                               United States District Judge